WAGNER, Appellant,

v.

ARMBRUSTER, Mayor, et al., Appellees.

[Cite as *Wagner v. Armbruster* (1996), 108 Ohio App.3d 719.]

Court of Appeals of Ohio,
Ninth District, Lorain County.

No. 95CA006134.

Decided Jan. 24, 1996.

720

722

*Michael Boylan*, for appellant.

*Alan E. Johnson*, for appellees.

REECE, Judge.

Appellant, Andy Wagner, appeals from the order of the court of common pleas granting summary judgment in favor of appellees Mayor Jeffrey Armbruster and the city of North Ridgeville, Ohio. We affirm.

## I

In May 1972, Andy Wagner joined the North Ridgeville Fire Department as a full-time firefighter. He was promoted to captain in May 1986. In May 1989, Wagner was promoted to assistant fire chief of the North Ridgeville Fire Department.

Prior to accepting the position as assistant fire chief, Wagner was a member of the International Association of Firefighters Union, Local Number 2129. Before Wagner became assistant fire chief the union filed a grievance opposing overtime opportunities for the assistant fire chief position. However, overtime continued to be available to the assistant fire chief.

Some months after his promotion, Wagner became concerned that he might be prohibited from participating in the overtime shift lists, as the union still opposed overtime opportunities for the assistant fire chief. He met, on various occasions, with the city's Safety Service Director and the mayor regarding his concerns. Wagner claims that he was assured that his eligibility for overtime shifts would continue. Ultimately, after rejecting an offer to remain on two of the three overtime shift lists, Wagner was "removed from the overtime lists, * * * placed on a forty (40) hour per week status and [was] no longer * * * considered when providing minimum shift strength manpower." Wagner met with Mayor Armbruster to request that he override the directive removing Wagner from overtime eligibility. Mayor Armbruster declined, and told Wagner to appeal the decision to the City Civil Service Commission.

On March 26, 1990, the City Civil Service Commission determined that Wagner should remain on the overtime shift lists. However, in a letter to Wagner dated

May 18, 1990, the City Civil Service Commission stated that, pursuant to the North Ridgeville Charter and the Civil Service Commission Rules and Regulations, it had no authority to hear a dispute concerning the reduction of overtime hours.[1] On May 5, 1993, Wagner filed the present action against Jeffrey Armbruster as mayor of the city of North Ridgeville, and against the city of North Ridgeville. Wagner alleges that he has been deprived of his constitutional right to property without due process of law and in violation of his right to the equal protection. He also maintains that he relied, to his detriment, on Mayor Armbruster's assurances that he would remain eligible for overtime.

Mayor Armbruster and the city moved the trial court for summary judgment on April 15, 1994. Wagner responded to the motion in June 1994. On April 10, 1995, the court of common pleas granted summary judgment in favor of Mayor Armbruster and the city. From that decision Wagner timely appeals.

## II

Wagner's sole assignment of error states that the trial court erred and abused its discretion in granting defendants-appellees' motion for summary judgment. Wagner argues that the trial court did not construe the evidence in his favor and improperly determined that there were no genuine issues of material fact.

## A

 In reviewing a trial court's grant of summary judgment, the appellate court applies the same standard as that used by the trial court. *Parenti v. Goodyear Tire & Rubber Co.* (1990), 66 Ohio App.3d 826, 829, 586 N.E.2d 1121, 1122. Pursuant to Civ.R. 56(C), summary judgment is proper if (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence, viewed in a light most favorable to the nonmoving party, that reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274. The moving party is not required to tender materials negating the opponent's cause of action. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273. Rather, the moving party need only set forth a basis for the summary judgment request, thereby forcing the nonmoving party to produce evidence on any issue for which that party bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus.

---

1. Wagner has not appealed this decision of the commission. We make no determination as to its accuracy.

Although the nonmoving party does not have to try the case in response to a motion for summary judgment, the party must produce more than a mere scintilla of evidence in support of his claims. *Paul v. Uniroyal Plastics Co.* (1988), 62 Ohio App.3d 277, 282, 575 N.E.2d 484, 487–488. To this end, the nonmoving party may not rely on isolated facts to support his claims, but instead must show that the evidence as a whole substantiates his claims and would permit a reasonable jury to properly render a verdict in his favor. *Id.* If the nonmoving party can offer only a scintilla of evidence, or if his evidence is merely colorable or not significantly probative, then the moving party is entitled to judgment as a matter of law. *Buckeye Union Ins. Co. v. Consol. Stores Corp.* (1990), 68 Ohio App.3d 19, 22, 587 N.E.2d 391, 393; *Thewlis v. Munyon* (Feb. 16, 1994), Medina App. No. 2262–M, unreported, at 3–4, 1994 WL 57787.

Wagner argues that he presented evidence sufficient to suggest that reasonable minds could differ as to whether Mayor Armbruster and the city were bound by the mayor's assurance that Wagner would remain eligible for overtime and as to whether Wagner was denied due process and equal protection of the law. We disagree.

## B

Wagner claims that Mayor Armbruster, "as an inducement to encourage to [*sic* ] plaintiff to accept such appointment [as assistant fire chief], assured * * * Plaintiff that he would suffer no loss or diminution in his compensated hours that he was then receiving from the Defendants, and further, informed the Plaintiff that he would continue to participate in overtime employment when offered and available * * *. Relying upon the representations and inducements made by the Defendant Mayor acting on behalf of the Defendant City, this Plaintiff then accepted the promotion * * *."

Wagner further contends that Mayor Armbruster, "[h]aving specifically directed Plaintiff–Appellant Wagner to seek a ruling from the Civil Service Commission," bound himself and the city to the decision rendered by that body, despite the commission's later determination that it had no jurisdiction to hear Wagner's complaint. These assertions are without merit.

Wagner has admitted the following in his deposition:

"Q. Okay. Did any official of the City of North Ridgeville give you assurances regarding the overtime situation at any point in time before you became assistant chief?

"A. They didn't have to. It was a given. * * *

" * * * *

"Q. So the answer to the question is no, no one specifically told you other than what your understanding was?

"A. No. Official, no."

■ Where there is no misrepresentation actually relied upon by the plaintiff, there can be no room for estoppel to arise. See, generally, *Andres v. Perrysburg* (1988), 47 Ohio App.3d 51, 56–57, 546 N.E.2d 1377, 1383–1384; *West v. Bentleyville* (1987), 42 Ohio App.3d 95, 96, 536 N.E.2d 401, 402–403. Because no representation was made to Wagner concerning overtime *before* he accepted the assistant fire chief position, he cannot claim he relied on assurances given him by the mayor or the city and thereby invoke the doctrine of estoppel.

■ "[W]hoever relies upon the conduct of public authorities * * * must take notice of the limits of their power." *Id.* at 96, 536 N.E.2d at 402. "It has long been the law of Ohio that persons dealing with municipal corporations are charged with notice of all statutory limitations on the power of such corporations and their agents * * *." *Kimbrell v. Seven Mile* (1984), 13 Ohio App.3d 443, 445, 13 OBR 532, 535, 469 N.E.2d 954, 957. We do not find reflected in the record that the charter of the city of North Ridgeville grants its mayor the power to select the forum for appeals from his decisions. Nor do we find anything in the Ohio Revised Code that provides this power. "[A] city will be bound only by representations authorized to be made by its officers or agents." *Andres, supra,* 47 Ohio App.3d at 57, 546 N.E.2d at 1384. Thus, Wagner cannot claim that because Mayor Armbruster suggested he appeal to the City Civil Service Commission, the mayor and the city are now estopped from relying on the commission's later determination that it did not have jurisdiction to hear Wagner's case.

There is no evidence that Wagner accepted the promotion while relying on assurances that he would remain on overtime. Wagner even admits that that was not the case. As a matter of law, the mayor and the city cannot be bound to a possibly invalid decision by the Civil Service Commission merely because Mayor Armbruster suggested that Wagner appeal his decision to the commission. The court properly granted summary judgment as to Wagner's claims of promissory estoppel.

## C

■ Wagner maintains that Mayor Armbruster and the city denied him due process and equal protection of the law in violation of Section 1983, Title 42, U.S.Code, the Fourteenth Amendment to the United States Constitution, and Sections 2 and 16, Article I, of the Ohio Constitution. Although Section 1983 alone does not provide protection against anything, it provides a remedy for

deprivations of rights secured by the Constitution and laws of the United States. *Sutton v. Cleveland Bd. of Edn.* (C.A.6, 1992), 958 F.2d 1339, 1348.

These national and state constitutional provisions provide that no person shall be deprived of life, liberty, or property without due process of law or be denied the equal protection of the law. The requirements of due process and equal protection under the Ohio and United States Constitutions are substantially identical. See *Andres*, 47 Ohio App.3d at 54–55, 546 N.E.2d at 1381–1383, citing *In re Appropriation for Hwy. Purposes* (1957), 104 Ohio App. 243, 4 O.O.2d 391, 148 N.E.2d 242, and *Kinney v. Kaiser Aluminum & Chem. Corp.* (1975), 41 Ohio St.2d 120, 123, 70 O.O.2d 206, 207–208, 322 N.E.2d 880, 882–883. Thus, we shall consider them collectively.

Three types of claims may be brought pursuant to Section 1983 under the Due Process Clause of the Fourteenth Amendment. " 'First, the Clause incorporates many of the specific protections defined in the Bill of Rights. * * * Second, the Due Process Clause contains a [second] substantive component that bars certain arbitrary, wrongful government actions "regardless of the fairness of the procedures used to implement them." * * * The Due Process Clause also encompasses a third type of protection, a guarantee of fair procedure.' (Citations omitted.)" (Brackets in original.) *Leibson v. Ohio Dept. of Mental Retardation & Dev. Disabilities* (1992), 84 Ohio App.3d 751, 762, 618 N.E.2d 232, 240, quoting *Zinermon v. Burch* (1990), 494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed.2d 100, 113. Wagner's claim does not include any of the specific protections contained in the Bill of Rights. Therefore, we will consider only substantive and procedural due process in our discussion.

"The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Albright v. Oliver* (1994), 510 U.S. 266, 272, 114 S.Ct. 807, 812, 127 L.Ed.2d 114, 122. Wagner's claim of a right to remain eligible for overtime hours does not fall within the realm of these fundamentally recognized areas of substantive due process. See *Sutton*, 958 F.2d at 1351.

Wagner's cause of action must lie, if at all, within the protections of procedural due process. Procedural due process will apply if Wagner has been deprived of life, liberty, or property. Wagner's claim is obviously one of property deprivation. Therefore, we must first ascertain whether his claimed right to overtime eligibility is a protected property interest.

Property interests are created by " 'existing rules or understandings that stem from an independent source such as state law.' " *Id.* at 1348, quoting *Bd. of Regents v. Roth* (1972), 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d

548, 561. Wagner, as one of Ohio's classified civil servants, possesses a property interest in continued employment. *Cleveland Bd. of Edn. v. Loudermill* (1985), 470 U.S. 532, 543, 105 S.Ct. 1487, 1493–1494, 84 L.Ed.2d 494, 504. Pursuant to R.C. 124.34 and North Ridgeville Civil Service Commission Rule X, classified civil service employees may not be reduced in pay or position, suspended, or removed without notice and a hearing. Thus, it would seem Wagner has a protected property interest in continued employment, and in continued employment at the same rate of pay and in the same level of position.

However, neither the Revised Code nor the North Ridgeville City Charter and Civil Service Commission Rules address the deprivation of overtime eligibility. The Ohio Administrative Code defines "pay" as:

"(1) The annual, non-overtime compensation due an employee *including*, when applicable, the cost of the appointing authority's insurance or other contributions, longevity pay, supplemental pay and hazard pay, divided by the product of the number of regularly scheduled hours in a work-week times fifty-two; or

"(2) The annual compensation assigned to a position including, when applicable, the cost of the appointing authority's insurance, or other contributions, longevity pay, supplemental pay and hazard pay." Ohio Adm.Code 124–1–02(N)(1) and (2).

Because the definition of "pay" does not include overtime pay, we hold that for purposes of constitutional due process analysis the right to overtime hours is not a recognizable property interest. Thus, Wagner was not deprived of a protected property interest when he was declared ineligible for overtime shifts. He was therefore not entitled to the protections of procedural due process.

 Assuming, *arguendo,* that eligibility for overtime hours is a protected property interest, Wagner would be entitled only to notice and an opportunity to respond. Wagner would be entitled to "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. * * * To require more * * * would intrude to an unwarranted extent on the government's interest * * *." *Loudermill,* 470 U.S. at 546, 105 S.Ct. at 1495, 84 L.Ed.2d at 506. The notice and opportunity to be heard need not be elaborate to satisfy the requirements of due process. *Id.* In the instant case, Wagner was provided with written and oral notice of the decision to remove the assistant fire chief from overtime eligibility. He then was given several opportunities to present his views to Mayor Armbruster and the Safety Service Director. Wagner was afforded all the process that was due prior to his removal from the overtime shift lists.

 In reviewing whether procedural due process has been furnished in the property interest context, it is necessary to examine postdeprivation process as well. "[I]t is clear that the required extent of post-termination procedures is

inextricably intertwined with the scope of pre-termination procedures." *Carter v. W. Res. Psychiatric Habilitation Ctr.* (C.A.6, 1985), 767 F.2d 270, 273. See, also, *Leibson,* 84 Ohio App.3d at 763, 618 N.E.2d at 240.

■ In the case *sub judice,* postdeprivation remedies were available. After a hearing on the merits, the City Civil Service Commission made a postdeprivation ruling in Wagner's favor. The commission later determined that it had been without jurisdiction to make the ruling. Wagner, pursuant to R.C. 124.34 and Commission Rule X, could appeal the commission's determination to the court of common pleas.[2] If appeal from the commission's determination were improper pursuant to R.C. 124.34 and Commission Rule X, Wagner could appeal the commission's determination pursuant to R.C. 2506.01.

■ Assuming he was entitled to it, Wagner was afforded adequate postdeprivation remedy consistent with due process. That he chose to forgo this remedy does not constitute a denial of due process. "[A]ll the process that is due is provided by a pre[deprivation] opportunity to respond, coupled with post[deprivation] administrative procedures as provided by the Ohio statute." *Loudermill,* 470 U.S. at 547–548, 105 S.Ct. at 1496, 84 L.Ed.2d at 507. The trial court properly granted summary judgment in favor of Mayor Armbruster and the city as to Wagner's procedural due process claims.

### D

■ "The purpose of the equal protection guarantee is to ensure that similarly situated persons are treated similarly under the law." *Andres,* 47 Ohio App.3d at 55, 546 N.E.2d at 1382, citing *Colgate v. Harvey* (1935), 296 U.S. 404, 56 S.Ct. 252, 80 L.Ed. 299. The equal protection guarantee prevents only invidious discrimination. If a fundamental right or suspect classification is not involved, then the classification is constitutional if it is rationally related to a legitimate government interest. *Lewis v. Chapin* (1994), 93 Ohio App.3d 695, 704, 639 N.E.2d 848, 853–854.

■ Wagner asserts that for purposes of the instant case, he falls within the classification of the classified civil service. However, we fail to see how the law has been applied discriminatorily to this class of persons.

Whether basing our equal protection analysis on Wagner's classification as a classified civil servant or as an assistant fire chief, he does not fall within a recognized suspect class. Neither is the right he seeks to protect a fundamental

---

2. The Ohio Supreme Court has determined the process under R.C. 124.34 provides adequate procedural safeguards to employees in the classified service. *Parfitt v. Columbus Correctional Facility* (1980), 62 Ohio St.2d 434, 438, 16 O.O.3d 455, 457–458, 406 N.E.2d 528, 531.

constitutional right. Therefore, the actions of the mayor and the city must survive only "rational-basis" scrutiny in order to endure constitutional attack.

Rational-basis scrutiny is the "most relaxed and tolerant form of judicial scrutiny under the Equal Protection Clause." *Dallas v. Stanglin* (1989), 490 U.S. 19, 26, 109 S.Ct. 1591, 1596, 104 L.Ed.2d 18, 26. Mayor Armbruster and the city have provided a rational basis for their actions. According to the collective bargaining agreement between the city and the International Association of Firefighters, the union was the "sole and exclusive bargaining agent with respect to wages, hours, and others [*sic*] terms and conditions of employment for all full-time employees * * * excluding the Fire Chief and Assistant Fire Chief." The union opposed management personnel's eligibility for overtime pursuant to the collective bargaining agreement when they were explicitly excluded from the agreement. Mayor Armbruster and the city have a legitimate interest in upholding the collective bargaining agreement. Excluding Wagner from overtime eligibility is a rational means of preserving their agreement with the union.

Mayor Armbruster and the city also have a legitimate governmental interest in assuring the public that only valid decisions of the City Civil Service Commission are enforced. After ruling in Wagner's favor, the commission ultimately determined that it did not have jurisdiction over a dispute involving overtime hours. Failing to reinstate Wagner to the overtime shift lists is a rational means of ensuring that only those determinations by the City Civil Service Commission that are legally enforceable will prevail. The trial court properly granted summary judgment in favor of Mayor Armbruster and the city on Wagner's claim of equal protection violation.

## E

Wagner presented no evidence that he relied on representations by Mayor Armbruster or any other city official when accepting the assistant fire chief position. As a matter of law, Mayor Armbruster and the city could not be bound by an invalid determination merely because the mayor suggested that Wagner appeal to the City Civil Service Commission.

Also as a matter of law, Wagner could not claim a violation of substantive due process. Wagner does not possess a constitutional right to overtime hours. Although not possessing a protected property interest in overtime hours, Wagner was given predeprivation notice and an opportunity to be heard. Assuming that he is entitled to procedural due process, Wagner presents no evidence that the postdeprivation appeal procedures provided in R.C. 124.34, North Ridgeville Civil Service Commission Rule X, and R.C. 2506.01 are inapplicable to him. Furthermore, Wagner's assertion that Mayor Armbruster and the city lacked a rational

basis both for removing him from overtime eligibility and for failing to reinstate him to overtime status does not rise to the level of evidence deemed sufficient to overcome a moving party's motion for summary judgment.

Wagner's sole assignment of error is overruled.

### III

The trial court properly granted summary judgment in favor of Mayor Jeffrey Armbruster and the city of North Ridgeville. The judgment of the trial court is affirmed.

*Judgment affirmed.*

QUILLIN, P.J., and DICKINSON, J., concur.